Sigmund S. Wissner-Gross
May Orenstein
BROWN RUDNICK LLP
Seven Times Square
New York, NY  10036
(212) 209-4800

Steven D. Pohl
BROWN RUDNICK LLP
One Financial Center
Boston, MA  02111
(617) 856-8200

*Counsel for Edward S. Weisfelner,
as Trustee of the LB Creditor Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LYONDELL CHEMICAL COMPANY, *et al.*, | Chapter 11 |
| | Case No. 09-10023 (CGM) |
| Debtors. | (Jointly Administered) |
| EDWARD S. WEISFELNER, AS TRUSTEE OF THE LB CREDITOR TRUST, | |
| Plaintiff, | Adv. Pro. No. 10-04609 (MG) |
| vs. | |
| FUND 1, *et al.*, | |
| Defendants. | |
| EDWARD S. WEISFELNER, AS TRUSTEE OF THE LB CREDITOR TRUST, | |
| Plaintiff, | Adv. Pro. No. 12-01570 (MG) |
| vs. | |
| STUART REICHMAN, *et al.*, | |
| Defendants. | |

**OBJECTIONS TO THE BANKRUPTCY COURT'S JULY 20, 2016**
**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| FACTUAL BACKGROUND | 3 |
| I. The Blavatnik Action | 3 |
| II. Confirmation of the Bankruptcy Plan and Establishment of the Trusts | 3 |
| III. The Shareholder Clawback Actions | 4 |
| IV. The Tribune Litigation | 6 |
| V. Proposed Findings and Conclusions | 7 |
| LEGAL STANDARD | 8 |
| OBJECTIONS | 8 |
| I. Objection 1: Objection to Bankruptcy Court's Conclusion that Tribune Requires Dismissal of the Constructive Fraudulent Transfer Claims Rather Than a Stay Pending Final Completion of the Appellate Process | 8 |
| II. Objection 2: Objection to Bankruptcy Court's Recommendation of Entry of a Final Order Dismissing the Actions | 13 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Acton v. Intellectual Capital Mgmt., Inc.,
    No. 15-CV-4004(JS)(ARL), 2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015) ...................... 9, 12

Authors Guild, Inc. v. Dialog Corp. (In re Literary Works in Elec. Databases
    Copyright Litig.),
    No. M-21-90 GBD, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) ................................. 9, 10, 13

Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,
    651 F.3d 329 (2d Cir. 2011) .......................................................................................... 5

F.D.I.C. v. Hirsch (In re Colonial Realty Co.),
    980 F.2d 125 (2d Cir. 1992) .......................................................................................... 11

FTI Consulting, Inc. v. Merit Mgmt. Grp., LP,
    No. 15-3388, 2016 WL 4036408 (7th Cir. Jul. 28, 2016) ....................................... 2, 11, 12

In re Fed.–Mogul Global, Inc.,
    684 F.3d 355 (3d Cir. 2012) .......................................................................................... 10

In re Lyondell Chem. Co.,
    541 B.R. 172 (Bankr. S.D.N.Y. 2015) ............................................................................ 6

In re PWS Holding Corp.,
    303 F.3d 308 (3d Cir. 2002) .......................................................................................... 11

In re Tribune Co. Fraudulent Conveyance Litig.,
    499 B.R. 310 (S.D.N.Y. 2013) ....................................................................................... 7

In re Tribune Co. Fraudulent Conveyance Litig.,
    818 F.3d 98 (2d Cir. 2016) ................................................................................. 1, 14, 10, 11

Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.,
    124 F.3d 487 (3d Cir. 1997) .......................................................................................... 11

Irving Tanning Co. v. Me. Superintendent of Ins. (In re Irving Tanning Co.),
    496 B.R. 644 (B.A.P. 1st Cir. 2013) ............................................................................. 10

Louis Vuitton Malletier S.A. v. LY USA, Inc.,
    676 F.3d 83 (2d Cir. 2012) ............................................................................................ 9

Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.),
    226 F.3d 237 (3d Cir. 2002) ..................................................................................................11

PG&E Co. v. California,
    350 F.3d 932 (9th Cir. 2003) ................................................................................................11

Sikhs for Justice v. Nath,
    893 F. Supp. 2d 598 (S.D.N.Y. 2012) ......................................................................9, 10, 12

United States v. Raddatz,
    447 U.S. 667 (1980) ................................................................................................................8

Weisfelner v. Fund 1 (In re Lyondell Chem. Co.),
    503 B.R. 348 (Bankr. S.D.N.Y. 2014) ............................................................................5, 6, 7

Weisfelner v. Hofmann (In re Lyondell Chem. Co.),
    No. 16-0518, 2016 WL 4030937 (S.D.N.Y. Jul. 27, 2016) ............................................2, 6, 14

Whyte v. Barclays Bank PLC,
    No. 13-2653, 2016 WL 1138642 (2d. Cir. Mar. 24, 2016) ............................................. *passim*

**Statutes**

11 U.S.C. § 546(e) ........................................................................................................... *passim*

11 U.S.C. § 548 .......................................................................................................................4

11 U.S.C. § 548(a)(1)(A) .........................................................................................................1

**Other Authorities**

Fed. R. App. P. 41 ..................................................................................................................7

Fed. R. Bankr. P. 9033 ..........................................................................................................8

Fed. R. Civ. P. 72(b) .............................................................................................................8

Edward S. Weisfelner, as Trustee of the LB Creditor Trust (the "Creditor Trustee"), submits these objections to the Bankruptcy Court's July 20, 2016 order (the "Proposed Findings and Conclusions") recommending dismissal of the constructive fraudulent transfer claims in Weisfelner v. Fund 1, Adv. Pro. No. 10-04609 (Bankr. S.D.N.Y.) [Docket No. 2414] and Weisfelner v. Reichman, Adv. Pro. No. 12-01570 (Bankr. S.D.N.Y.) [Docket No. 118] (the "Actions").

## PRELIMINARY STATEMENT

The Creditor Trustee objects to the Bankruptcy Court's Proposed Findings and Conclusions on two bases. First, the Creditor Trustee objects to the Bankruptcy Court's recommendation to dismiss the constructive fraudulent transfer claims before the appeals process in In re Tribune Co. Fraudulent Conveyance Litig., 818 F.3d 98 (2d Cir. 2016) (and its companion case Whyte v. Barclays Bank PLC, No. 13-2653, 2016 WL 1138642 (2d. Cir. Mar. 24, 2016)) is complete. Tribune, the decision on which the Bankruptcy Court bases its dismissal recommendation, concerns a first-impression implied preemption issue concerning the scope of the Section 546(e) safe harbor as to which, after years of litigation, the appellate process has now reached its final stage—*i.e.*, the seeking of certiorari review in the U.S. Supreme Court. The most efficient and correct approach is to allow the appellate process to yield a final rule on this first-impression issue, rather than initiating a parallel round of appeals on the scope of Tribune while Tribune still remains subject to revision by the U.S. Supreme Court. This is particularly so in light of the Seventh Circuit's issuance of a decision (subsequent to the Bankruptcy Court's issuance of the Proposed Findings and Conclusions here) that, while concerning the direct application of the safe harbor rather than implied preemption, creates a sharp and express split

with the Second Circuit regarding the safe harbor's scope and the breadth of Congressional purposes underlying its enactment.[1]

Second, the Creditor Trustee objects to the Bankruptcy Court's recommendation insofar as it recommends entry of a final order dismissing the Actions. Because former Bankruptcy Court Judge Gerber on December 7, 2015 entered interlocutory orders dismissing the state law intentional fraudulent claims in the Actions, the Bankruptcy Court in its Proposed Findings and Conclusions recommended entry of a final order that would dismiss the Actions with prejudice. However, subsequent to the issuance of the Proposed Findings and Conclusions, the decision upon which dismissal of the intentional fraudulent transfer claims was premised was reversed by the District Court.[2] Further, the Bankruptcy Court did not adjudicate the issue of whether the Tribune decision (which was issued after Judge Gerber's dismissal of the intentional fraudulent transfer claims, and did not adjudicate the issue of the application of implied preemption to state law intentional fraudulent transfer claims), requires dismissal of the intentional fraudulent transfer claims here.

The Creditor Trustee requests that the District Court decline to adopt the Bankruptcy Court's Proposed Findings and Conclusions, and instead enter a stay of these actions pending completion of the appeals process in Tribune and Whyte (*i.e.*, in essence the same relief sought by Defendants as an alternative in their motion). In the alternative, the Creditor Trustee requests that the District Court defer entry of a final order, to allow the Bankruptcy Court time to entertain a petition by the Trustee for reinstatement of the intentional fraudulent transfer claims that were dismissed based upon the now-reversed decision concerning the pleading of intentional fraudulent transfer.

---

[1] FTI Consulting, Inc. v. Merit Mgmt. Grp., LP, No. 15-3388, 2016 WL 4036408 (7th Cir. Jul. 28, 2016).

[2] Weisfelner v. Hofmann (In re Lyondell Chem. Co.), No. 16-0518, 2016 WL 4030937 (S.D.N.Y. Jul. 27, 2016).

**FACTUAL BACKGROUND**

As the District Court is familiar with the allegations giving rise to the claims in these Actions in light of the briefing submitted by the parties concerning the same underlying factual allegations in connection with the District Court's review and reversal of the Bankruptcy Court's dismissal of the intentional fraudulent transfer claim in Weisfelner v. Hofmann, Adv. Pro. No. 10-05525 (Bankr. S.D.N.Y.), the Creditor Trustee assumes familiarity with those allegations and here addresses the procedural issues relevant to these objections.

**I.     The Blavatnik Action**

Following the commencement of the Chapter 11 cases, on July 21, 2009, the Bankruptcy Court granted the Official Committee of Unsecured Creditors (the "Committee") standing to pursue certain estate claims, including claims related to the Merger, and the next day an action was commenced against, *inter alia*, Blavatnik, Blavatnik-controlled entities, and the former directors and officers of Lyondell and certain of its subsidiaries.[3]

**II.    Confirmation of the Bankruptcy Plan and Establishment of the Trusts**

In April 2010, the Bankruptcy Court confirmed LBI's plan of reorganization.  Third Am. Joint Ch. 11 Plan of Reorganization for the LyondellBasell Debtors, In re Lyondell Chem. Co., No. 09-10023 (Bankr. S.D.N.Y. Mar. 15, 2010) [Dk. No. 3930] (the "Plan"); Order Confirming Ch. 11 Plan, In re Lyondell Chem. Co., No. 09-10023 (Bankr. S.D.N.Y. Apr. 23, 2010) [Dk. No. 4418].

The Plan established two trusts.  Plan §§ 5.7, 5.8.  The Litigation Trust was established to prosecute various unsettled estate claims (*i.e.*, the Blavatnik action and Hofmann); and the Creditor Trust was established to prosecute state law fraudulent transfer causes of action against

---

[3] Weisfelner v. Blavatnik, Adv. Pro. No. 09-1375 (MG) (Bankr. S.D.N.Y.) ("Blavatnik").

the former shareholders of Lyondell based on their receipt of consideration in connection with the Merger (*i.e.*, Fund 1 and Reichman). Id. The Debtors' unsecured creditors are the primary beneficiaries of both trusts, and Edward S. Weisfelner is the Trustee of both trusts. Id. The creation of the Creditor Trust was in accord with the parties' rights, and was endorsed and approved by Judge Gerber.[4]

### III. The Shareholder Clawback Actions

After confirmation of the Plan, three fraudulent transfer adversary proceedings were commenced against certain former shareholders of Lyondell, seeking to avoid and recover as fraudulent the consideration that such shareholders received in exchange for their Lyondell shares in connection with the Merger ("Merger Consideration").

On October 22, 2010, the Creditor Trustee commenced the Fund 1 action in New York state court. The action was subsequently removed by certain defendants to federal court. In Fund 1, the Creditor Trustee asserted intentional and constructive fraudulent transfer claims under applicable state law, seeking to recover a total of approximately $5.9 million in Merger Consideration received by certain named former shareholders of Lyondell. Third Am. Compl., Fund 1 [Dk. No. 1941].

On December 23, 2010, Edward S. Weisfelner, as Trustee of the LB Litigation Trust (the "Litigation Trustee"), commenced Hofmann. The Litigation Trustee filed Hofmann as a putative defendant class action pursuant to which he asserted both constructive and intentional fraudulent transfer claims under Section 548 of the Bankruptcy Code against, with certain exceptions, a class consisting of all former Lyondell shareholders that received Merger Consideration. Compl., Hofmann [Dk. No. 1].

---

[4] Judge Gerber rejected the moving defendants' efforts to attack his approval of the Plan's structure of a separate Creditor Trust and Litigation Trust.

Finally, on December 19, 2011, the Creditor Trustee commenced a putative defendant class action, asserting state law intentional and constructive fraudulent transfer claims against a class of former Lyondell shareholders that received Merger Consideration and are not named defendants in Fund 1 or in Blavatnik. Am. Compl., Reichman [Dk. No. 27]. The action was subsequently removed by certain defendants to federal court.

### A. The Motions to Dismiss the Clawback Actions and the District Court's Reversal Order in Hofmann

In 2011, before Reichman was filed, defendants in the Fund 1 and Hofmann cases moved to dismiss. Notice of Mot. to Dismiss, Fund 1 [Dk. No. 71]; Notice of Motion to Dismiss, Hofmann [Dk. No. 158]. The Shareholder Defendants argued that both the state-law fraudulent transfer claims in Fund 1 and the federal-law constructive fraudulent transfer claims in Hofmann were barred by the safe harbor provision in Section 546(e) of the Bankruptcy Code. Mem. of Law in Supp. of Defs.' Mot. to Dismiss, Fund 1 [Dk. No. 72]; Mem. of Law in Supp. of Defs.' Mot. to Dismiss, Hofmann [Dk. No. 163].[5]

On January 14, 2014, Judge Gerber ruled on the defendants' motions to dismiss in Fund 1, granting in part and denying in part the motions. Weisfelner v. Fund 1 (In re Lyondell Chem. Co.), 503 B.R. 348 (Bankr. S.D.N.Y. 2014) (the "January 2014 Decision").[6] The Bankruptcy Court granted the defendants' motion to dismiss the intentional fraudulent transfer claim, but granted the Trustee leave to replead. Id. at 385-92. However, the Bankruptcy Court denied defendants' motion to dismiss the state-law fraudulent transfer claim on preemption grounds,

---

[5] After oral argument on the motions to dismiss, the Trustee entered a stipulation providing for the voluntary dismissal of the federal-law constructive fraudulent transfer claim in Hofmann in light of the Second Circuit's ruling in Enron. Order, Hofmann (Oct. 6, 2011) [Dk. No. 511]; see also Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V., 651 F.3d 329 (2d Cir. 2011).

[6] The Bankruptcy Court later applied its holding in Fund 1 to the complaints in Reichman and Hofmann. See Scheduling Order, Reichman (Mar. 11, 2014) [Dk. No. 22] at 2; Scheduling Order, Hofmann (Mar. 11, 2014) [Dk. No. 746].

holding that, contrary to the Shareholder Defendants' argument, Section 546(e) does not preempt, and thus does not bar, the Trustee's state-law fraudulent transfer claims in Fund 1 (and similarly, Reichman). Id. at 357-78.

Following the Bankruptcy Court's January 2014 Decision, the Trustee filed amended complaints in the Fund 1, Hofmann and Reichman actions to replead the intentional fraudulent transfer claims. Thereafter, on July 30, 2014, defendants again filed motions to dismiss the three clawback actions. On November 18, 2015, Judge Gerber granted defendants' motion to dismiss the intentional fraudulent transfer claims in all three clawback actions, but again declined to dismiss the state-law constructive fraudulent transfer claims in Fund 1 and Reichman. See In re Lyondell Chem. Co., 541 B.R. 172, 201 (Bankr. S.D.N.Y. 2015) ("November 2015 Decision").[7] On December 8, 2015, the Bankruptcy Court entered a judgment dismissing Hofmann with prejudice. Judgment, Hofmann [Dk. No. 908]. The Litigation Trustee appealed the Bankruptcy Court's ruling in Hofmann.

On July 27, 2016, the District Court issued an opinion and order reversing the Bankruptcy Court's November 2015 Decision, reinstating the intentional fraudulent transfer claim in Hofmann, and remanding the action to the Bankruptcy Court for further proceedings. See Hofmann, 2016 WL 4030937, at *16. Thus, the decision upon which Bankruptcy Court dismissed the intentional fraudulent transfer claims in Fund 1 and Reichman were based has now been reversed.

## IV. The Tribune Litigation

In September 2013, United States District Judge Sullivan of the Southern District of New York issued an opinion in Tribune holding, as Judge Gerber subsequently held in his January

---

[7] The Bankruptcy Court entered interlocutory orders in Fund 1 and Reichman to this effect on December 7, 2015. Order, Fund 1 [Dk. No. 2359]; Order, Reichman [Dk. No. 91].

2014 Decision, that Section 546(e) does not preempt individual creditors' state-law claims for constructive fraudulent transfer. In re Tribune Co. Fraudulent Conveyance Litig., 499 B.R. 310, 320 (S.D.N.Y. 2013); Weisfelner v. Fund 1 (In re Lyondell Chem. Co.), 503 B.R. 348, 378 (Bankr. S.D.N.Y. 2014). Indeed, Judge Gerber relied upon the District Court's holding in Tribune in rendering the January 2014 Decision. See id. at 373-78.

On appeal, the Second Circuit in Tribune held that Section 546(e) impliedly preempts state-law constructive fraudulent transfer claims of creditors when the debtor files for bankruptcy. See Tribune, 818 F.3d at 118-19. In so ruling, the Second Circuit held that the text of Section 546(e) is ambiguous as to whether it barred claims only by a bankruptcy trustee or claims of creditors as well, and that the Congressional purposes underlying enactment of the safe harbor mandated a finding of implied preemption of the constructive fraudulent claims asserted in Tribune. See id. at 110-12.

On April 12, 2016, the Tribune plaintiffs filed a petition for rehearing or rehearing *en banc* in the Second Circuit, automatically staying the issuance of the mandate from the Second Circuit. Pet. of Pls.-Appellants-Cross-Appellees for rehearing or rehearing *en banc*, In re Tribune Co. Fraudulent Transfer Conveyance Litig., No. 13-3992 (2d Cir. Apr. 12, 2016) [Dk. No. 365]; Fed. R. App. P. 41. That petition was denied on July 22, 2016, commencing the period for seeking certiorari review in the U.S. Supreme Court.[8]

## V.    **Proposed Findings and Conclusions**

On July 20, 2016, the Bankruptcy Court issued its Proposed Findings and Conclusions. Relying upon the Second Circuit's decision in Tribune, the Bankruptcy Court recommended dismissal of the constructive fraudulent transfer claims, and denied Defendants' alternative

---

[8] On July 12, 2016, the Supreme Court extended until August 19, 2016 the time for petitioners in Whyte to seek certiorari review. See Whyte, No. 13-2653 (2d Cir.) (July 15, 2016) [Dk. No. 272].

request for a stay pending resolution of the appeals process in Tribune.  See Proposed Findings at 8.  The Bankruptcy Court indicated that it would leave entry of a final order to the District Court.  See id. at 9.

## LEGAL STANDARD

Upon submission of a bankruptcy court's proposed findings of fact and conclusions of law, a district court "shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule."  Fed. R. Bankr. P. 9033(d).  De novo review under Rule 72(b)[9] requires that the district court give "fresh consideration" to issues to which a party has objected, and "consider the record which has been developed . . . and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate."  United States v. Raddatz, 447 U.S. 667, 675 (1980) (quoting H.R. Rep., at 3, U.S. Code Cong. & Admin. News 1976, p. 6163).  Upon reviewing a decision de novo, "[t]he district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions."  Fed. R. Bankr. P. 9033(d).

## OBJECTIONS

**I.    Objection 1: Objection to Bankruptcy Court's Conclusion that Tribune Requires Dismissal of the Constructive Fraudulent Transfer Claims Rather Than a Stay Pending Final Completion of the Appellate Process**

Relying upon Tribune, the Bankruptcy Court ruled that the Creditor Trustee's constructive fraudulent transfer claims are barred by Section 546(e).  See Proposed Findings at 8.  In explaining its decision to dismiss rather than implementing the alternative relief of entering a

---

[9] The Advisory Committee Note to Bankruptcy Rule 9033 provides that Bankruptcy Rule 9033(d) "adopts the de novo review provisions of [Fed. R. Civ. P.] 72(b)."

8

stay pending resolution of appeals in Tribune and Whyte, the Bankruptcy Court relied primarily upon the propositions that Tribune was controlling and that there was no circuit split with respect to the principles set forth in Tribune.  See id.  These propositions do not provide a sound basis for dismissing rather than entering a stay, particularly as the split in jurisprudence among the Circuits on the intended scope of Section 546(e) has only become more pronounced since the issuance of the Proposed Findings and Conclusions, as discussed below.  The District Court has the power to enter a stay pending final completion of the appellate process, a strong basis exists for doing so here and Defendants have identified no meaningful prejudice that would result from such a stay.

Courts have the inherent power to stay proceedings in order to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96 (2d Cir. 2012) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).[10]  Thus, a court may at its discretion "enter a stay pending the disposition of an independent matter whose outcome will likely affect the case on the court's calendar." Acton, 2015 WL 9462110, at *2-3 (staying proceedings, in the interest of justice, pending the outcome of Supreme Court and D.C. Circuit cases that could "potentially conclude" the matter before the court, or at the very least, "settle important issues of law" relating to the claims in the case); see also Sikhs for Justice, 893 F. Supp. 2d at 622 (staying proceedings pending the resolution of a case pending before the Supreme Court that could preclude plaintiff's claim); Authors Guild, Inc. v. Dialog Corp. (In re Literary Works in Elec.

---

[10] To determine whether a stay is appropriate, the court considers: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiff if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." Acton v. Intellectual Capital Mgmt., Inc., No. 15-CV-4004(JS)(ARL), 2015 WL 9462110, at *2 (E.D.N.Y. Dec. 28, 2015); Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 621 (S.D.N.Y. 2012).

9

Databases Copyright Litig.), No. M-21-90 GBD, 2001 WL 204212, at *1-3 (S.D.N.Y. Mar. 1, 2001) (staying proceedings pending a decision by the Supreme Court in a case that "is likely to have a significant, if not dispositive, impact on the cases" before the court). Indeed, a court "properly exercise[s] its staying power when a higher court is close to settling an important issue of law bearing on the action." Sikhs for Justice, 893 F. Supp. 2d at 622 (citing Marshel v. AFW Fabric Corp., 552 F.2d 471, 472 (2d Cir. 1977)); Literary Works, 2001 WL 204212, at *2 (same).

Here, the most efficient course is for the District Court to enter a stay until the certiorari review process in Tribune and Whyte—the clock for which seeking such review is now running—is complete.

First, the resolution of the Tribune and Whyte rule on implied preemption clearly is relevant to the matter pending here, as the Second Circuit's rulings in those cases formed the basis for the Bankruptcy Court's recommendation to dismiss the constructive fraudulent transfer claims in Fund 1 and Reichman.

Second, there is a non-trivial prospect of revision of the implied preemption rule by the U.S. Supreme Court on certiorari review of Tribune and Whyte.[11] The implied preemption issues are novel, and a review of the Tribune decision indicates multiple potential bases for certiorari review, including departures by the Second Circuit in Tribune from the approaches of other Circuits on key legal principles underlying the ultimate holding.[12] Indeed, the Bankruptcy

---

[11] Appellants in Whyte have sought and obtained from Justice Ginsburg an extension of time to petition for certiorari review (until August 19, 2016). The clock for Appellants in Tribune to seek certiorari review is now likewise running, with the Second Circuit on July 22, 2016 having denied their motion for rehearing.

[12] For example, the Tribune court's threshold holding that the presumption against preemption does not apply, see Tribune, 818 F.3d at 110-12, is in conflict with the rule in other Circuits. See Irving Tanning Co. v. Me. Superintendent of Ins. (In re Irving Tanning Co.), 496 B.R. 644, 663 (B.A.P. 1st Cir. 2013) ("This strong presumption against inferring Congressional preemption also applies in the bankruptcy context.") (quoting Fed.-Mogul); In re Fed.–Mogul Global, Inc., 684 F.3d 355, 365 (3d Cir. 2012) ("This 'strong presumption against

10

Court itself, although stating that there was no circuit split with respect to the principles set forth in Tribune, included a "but see" citation to a recent decision that recognized the existence of a divergence of approaches between the Third and Second Circuits with respect to key principles underlying the Tribune outcome and outright rejected the Tribune analysis and found no preemption.  See Proposed Findings at 8 (citing PAH Litig. Tr. (In re Physiotherapy Holdings, Inc.), Adv. Pro. No. 15-51238 (KG), 2016 WL 3611831, at *7 (Bankr. D. Del. Jun. 20, 2016)).

Moreover, subsequent to issuance of the Proposed Findings and Conclusions, the split between the Circuits on jurisprudence concerning the intended scope of the safe harbor has grown.  On July 28, 2016, the Seventh Circuit issued a decision in FTI Consulting, Inc. v. Merit Management Group, LP, No. 15-3388, 2016 WL 4036408 (7th Cir. Jul. 28, 2016), that creates an express circuit split regarding the scope of Section 546(e).  While the decision does not adjudicate an issue of implied preemption, it concerns the scope of the Section 546(e) safe harbor's direct application, and includes a discussion of the Congressional purposes implicated by questions concerning the safe harbor's scope.  In the decision, the Seventh Circuit expressly notes that it is breaking with the Second Circuit on the scope of the safe harbor, see id. at *6-7,

---

inferring Congressional preemption' also applies 'in the bankruptcy context.'") (quoting Integrated Solutions, Inc. v. Serv. Support Specialties, Inc., 124 F.3d 487, 493 (3d Cir. 1997)); PG&E Co. v. California, 350 F.3d 932, 943 (9th Cir. 2003) ("Even though bankruptcy is one of only two federal legislative powers in Article I, Section 8 of the Constitution in which the power to make 'uniform' laws is made explicit, the presumption against displacing state law by federal bankruptcy law is just as strong in bankruptcy as in other areas of federal legislative power.").

Further, the Tribune decision, to the extent that it relies on the notion that there must be a "reversion" of the state-law claims to the creditors, see Tribune, 818 F.3d at 113-15 (considering the "reversion" of state-law claims and rejecting contention "that, when creditors' avoidance claims are lodged in the trustee *et al.* and are diminished in that hand by the Code, they reemerge in undiminished form in the hands of the creditors after the statute of limitations governing actions by the trustee *et al.* has run or the bankruptcy court lifts the automatic stay"), contradicts the rule enunciated by the Third Circuit that the state law claims that a Trustee may prosecute under Section 544 during his period of exclusivity nevertheless remain the property of the creditors—and not of the estate—throughout the exclusivity period, see Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.), 226 F.3d 237, 241-43 (3d Cir. 2002); see also In re PWS Holding Corp., 303 F.3d 308, 314-15 (3d Cir. 2002) (acknowledging that creditors' state-law fraudulent transfer claims are not property of the debtor's estate)—a rule that the Second Circuit itself previously adhered to before apparently opening up a split in Tribune, see F.D.I.C. v. Hirsch (In re Colonial Realty Co.), 980 F.2d 125, 131 (2d Cir. 1992).

11

by holding that transfers "conducted through financial institutions (or the other entities named in section 546(e)), where the entity is neither the debtor nor the transferee but only the conduit" are not protected, see id. at *1 (emphasis in original).  In reaching its conclusion, the Seventh Circuit takes a narrower and more targeted view of the scope and purposes of the safe harbor than did the Second Circuit in Tribune (and prior Second Circuit decisions cited in Tribune), stating that "[t]he safe harbor addresses cases in which the debtor-transferor or transferee is a financial institution or other named entity," that "[t]he safe harbor has ample work to do when an entity involved in the commodities trade is a debtor or actual recipient of a transfer, rather than simply a conduit for funds," and that "[w]e will not interpret the safe harbor so expansively that it covers any transaction involving securities that uses a financial institution or other named entity as a conduit for funds."  See FTI Consulting, 2016 WL 4036408, at *5-6.  While the FTI Consulting decision does not adjudicate an implied preemption issue, the foundation of any implied preemption ruling (including that in Tribune) is the nature and scope of Congressional purposes that purportedly would be thwarted, and in this respect, the Seventh Circuit's more circumscribed interpretation of those purposes only increases the likelihood that the Supreme Court will review Tribune, given that decision's reliance on a more sweeping view of the safe harbor's scope and Congressional purpose.

      The real possibility that the Supreme Court will grant certiorari review to resolve the growing divergence between the jurisprudence of the Circuits on the scope of the safe harbor constitutes a strong basis for entering a stay to allow the appellate review process to yield a final rule.  See Acton, 2015 WL 9462110, at *3 ("The Court finds that a stay pending the outcome of the Supreme Court Cases and D.C. Circuit Appeals is in the interest of justice."); Sikhs for Justice, 863 F. Supp. 2d at 622 ("it would be an inefficient use of time and resources of the court

and the parties to proceed in light of a pending U.S. Supreme Court decision, particularly where that decision may not settle every question of fact and law before this Court, but in all likelihood will settle many and simplify them all") (internal quotation marks omitted) (quoting Literary Works, 2001 WL 204212, at *3); Literary Works, 2001 WL 204212, at *3 ("It would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision that all agree will significantly impact this . . . litigation.").

Third, Defendants in their briefing before the Bankruptcy Court identified no basis for a rush to adjudication while the appeals process is not complete—indeed, Defendants themselves requested a stay pending completion of the appeals process in Tribune as their alternative form of relief.

Ultimately, dismissing on the merits now, rather than entering a stay while the appellate process completes its final stage, would be wasteful and unnecessary. It is most efficient to simply wait for the appellate process to yield a final rule in Tribune and Whyte.

## II.     Objection 2:  Objection to Bankruptcy Court's Recommendation of Entry of a Final Order Dismissing the Actions

The Creditor Trustee also objects to the Proposed Findings and Conclusions insofar as they recommend entry of a final order dismissing the Actions in their entirety. As noted above, the more efficient course is simply for the Actions to be stayed pending final completion of the appellate process in Tribune and Whyte. However, even if the District Court declines to enter such stay, the Creditor Trustee still objects to entry of a final order dismissing the Actions in their entirety, because he initially asserted claims for intentional fraudulent transfer, and although those claims were dismissed by interlocutory order of the Bankruptcy Court on December 7, 2015, the grounds in the November 2015 Decision upon which those dismissals were based have

13

been rejected and reversed by the District Court subsequent to the Bankruptcy Court's issuance of the Proposed Findings and Conclusions.  See Hofmann, 2016 WL 4030937, at *16.

Further, the Bankruptcy Court has not adjudicated whether Tribune requires dismissal of the intentional fraudulent transfer claims here.  The Tribune decision was issued after dismissal of the intentional fraudulent transfer claims here, and it concerned a constructive fraudulent transfer claim.  See Tribune, 818 F.3d at 111-12.  The principle that Congressional policy is "in conflict with" state law avoidance claims arguably has less force with respect to an intentional fraudulent transfer claim.[13]

As explained above, the Creditor Trustee believes that the appropriate approach is to stay these actions pending final completion of the appeals process in Tribune and Whyte.  However, if the District Court is inclined to accept the recommendation to dismiss the constructive fraudulent transfer claim at this time, the Creditor Trustee requests that the District Court defer entry of a final order, to allow the Bankruptcy Court time to entertain a petition by the Trustee for reinstatement of the intentional fraudulent transfer claims and to address, if raised by Defendants, the potential application of Tribune to intentional fraudulent transfer claims asserted under state law.

---

[13] For example, Congress itself viewed and treated intentional fraudulent transfer claims differently than constructive fraudulent transfer claims, specifically carving out federal intentional fraudulent transfer claims under Section 548(a)(1)(A) from the coverage under safe harbor.  See 11 U.S.C. § 546(e) (excepting intentional fraudulent transfer claims under Section 548(a)(1)(A) from the safe harbor).

## CONCLUSION

For the foregoing reasons, the Creditor Trustee respectfully requests that the District Court decline to adopt the Proposed Findings and Conclusions and instead enter a stay pending completion of the appeals process in <u>Tribune</u> and <u>Whyte</u>.

Dated: August 3, 2016
      New York, New York

By: <u>/s/ Sigmund S. Wissner-Gross</u>
Sigmund S. Wissner-Gross
May Orenstein
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
(212) 209-4800

-and-

Steven D. Pohl
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
(617) 856-8200

*Counsel for Edward S. Weisfelner, as Trustee of the LB Creditor Trust*